## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

                              Plaintiff,

                    v.                              Criminal Action No. 22-122-GBW

ANTONIO HERNANDEZ,

                              Defendant.

---

David C. Weiss, Benjamin L. Wallace, Eli H. Klein, U.S. ATTORNEY'S OFFICE, Wilmington, Delaware.

   *Counsel for Plaintiff*

Eleni Kousoulis, David L. Pugh, PUBLIC FEDERAL DEFENDER'S OFFICE, Wilmington, Delaware.

   *Counsel for Defendant*

## MEMORANDUM OPINION

March __5__, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Presently before this Court is Defendant Antonio Hernandez's ("Hernandez" or "Defendant") Motion to Dismiss the Indictment charging Defendant with possession of a machine gun, in violation of 18 U.S.C. § 922(o). D.I. 53 (the "Motion"). Defendant contends that § 922(o) is unconstitutional on its face under recent Supreme Court and Third Circuit authority.[1] The Government opposes Defendant's Motion. D.I. 56. Defendant subsequently filed a reply brief. D.I. 60. For the reasons set forth below, Defendant's Motion is denied in all respects.

## I. BACKGROUND

The Government alleges that Customs and Border Patrol intercepted a package from Russia which contained hidden parts to assemble 24 auto sears. D.I. 56 at 2. An auto sear is a device that converts a semi-automatic weapon into a fully automatic weapon.

The package was addressed to "Dixie Velez" in Milford, Delaware. *Id.* at 1. The only occupants of the shipping address were Defendant and his girlfriend/co-defendant, Makayla Kelley. *Id.* at 2. According to the Government, an individual telephoned the U.S. Postal Service repeatedly to ask about the package and, each time, used the name "Romeo Perez," a known alias of Hernandez. *Id.* Law enforcement conducted a controlled delivery of the package to the shipping address, whereupon Kelley allegedly claimed to be Dixie and accepted the package. *Id.* The

---

[1] In a footnote, Defendant asserts "as a secondary argument" that § 922(o) is unconstitutional for exceeding Congress's Commerce Clause power. D.I. 53 at 1 n. 1. Defendant's argument that Congress may not regulate intrastate firearm possession, even if that firearm has moved in interstate commerce, is squarely foreclosed by precedent. *Scarborough v. United States*, 431 U.S. 563, 575 (1977) (there needs only be "the minimal nexus that the firearm have been, at some time, in interstate commerce.").

Government alleges that Hernandez and Kelley exited the house with the package, drove away, and were pulled over shortly thereafter with the package opened inside the car. *Id.* at 3.

Hernandez and Kelley were indicted for possessing the 24 auto sears under § 922(o) and § 924(a)(2). The collection of parts for auto sears constitutes a "machinegun" under the meaning of § 922(o), because they are a "combination of parts designed and intended . . . for use in converting a weapon into a machine gun." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(24).

Defendant files the present Motion to Dismiss challenging the constitutionality of § 922(o) on grounds that the statute is unconstitutional on its face following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*") and the Third Circuit's decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) ("*Range*"). D.I. 53.

## II. LEGAL STANDARD

A facial challenge to a statute is "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). To succeed in his challenge, Defendant must show "'that no set of circumstances exists under which the Act would be valid,' *i.e.,* that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *Salerno*, 481 U.S. at 745).

The Second Amendment of the United States Constitution holds that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *D.C. v. Heller*, 554 U.S. 570, 626 (2008). As the Supreme Court recognized in *Heller*, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right

3

to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* The *Heller* Court recognized, for instance, the longstanding "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (quoting 4 Commentaries on the Laws of England 148-149 (1769) (hereinafter, "Blackstone")). The *Heller* Court rejected the proposition that the Second Amendment applies only to weapons useful in warfare, in large part because it would lead to the "startling" result that "restrictions on machineguns . . . might be unconstitutional." *Id.* at 624. The Court continued to reject the proposition that if "M–16 rifles and the like [] may be banned, then the Second Amendment right is completely detached from the prefatory clause," because the conception of the Second Amendment at the time of ratification was that "the body of all citizens capable of military duty" would "bring the sorts of lawful weapons that they possessed at home to militia duty." *Id.* at 627.

Recently, the Supreme Court revisited its Second Amendment jurisprudence in *Bruen*. 142 S. Ct. 2111. The Court in *Bruen* considered a constitutional challenge to a New York State licensing scheme that criminalized the possession of "'any firearm' without a license, whether inside or outside the home." *Id.* at 2122 (citation omitted).

In ruling on the constitutionality of the statute, the Supreme Court recognized that Courts of Appeals interpreted *Heller* to create a two-step framework for analyzing Second Amendment challenges. *Id.* at 2125-26. Under the first step of this analysis, the so-called historical evidence step, the government was required to prove that its firearms regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. If the regulated conduct fell beyond the Second Amendment's historical and original scope, the activity was not protected, and the analysis ended there. *Id.* at 2126. If, however, "historical evidence at this step is inconclusive or suggests that the regulated activity is not categorically unprotected, the

4

courts generally proceed to step two," which analyzes "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.*

The Third Circuit applied the same two-step framework when it held that the Second Amendment "does not protect the possession of machine guns." *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial Number: LW001804*, 822 F.3d 136, 141-42 (2016) (hereinafter, *Palmetto*). At the historical evidence step, the *Palmetto* Court emphasized the *Heller* Court's holding that machine guns "may be banned without burdening Second Amendment rights." *Id.* at 141. The Third Circuit applied the "dangerous and unusual" standard approvingly cited in *Heller* and concluded that machine guns were "not in common use for lawful purposes" and are "exceedingly dangerous." *Id.* at 142. Having determined that machine gun regulations were within the historical tradition of regulation—and thus outside the traditional scope of the Second Amendment—the Court did not continue to step two (interest-balancing). *Id.* at 144.

In 2022, the Supreme Court in *Bruen* rejected the two-step analysis, finding that it was "one step too many." 142 S.Ct. at 2127. According to the Court, "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* (citing *Heller*, 554 U.S. 554; *McDonald v. City of Chicago*, 561 U.S. 742 (2010)). Thus, the Court found that, when it is determined that the Second Amendment's plain language protects an individual and his conduct, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127, 2131. While recognizing that this historical approach can be difficult in circumstances that raise

5

"unprecedented societal concerns or dramatic technological changes," the Court explained that courts could conduct their analysis using analogical reasoning and "determin[e] whether a historical regulation is a proper analogue for a distinctly modern firearm regulation . . . ." *Id.* at 2132. According to the Court, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin. Id.* (emphasis in original). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* The *Bruen* Court again explicitly identified laws that ban the "carrying of 'dangerous and unusual weapons'" as appropriate historical analogues, noting that weapons not in "'common use' for self-defense today'" may be banned. *Id.* at 2143.

Shortly after *Bruen*, the Third Circuit in *Range* considered the constitutionality of a felon-in-possession statute as it applied to Appellant Brian Range, who had been convicted of making a false statement to obtain food stamps in violation of Pennsylvania law in 1995. 69 F.4th at 101. Under the first step of the *Bruen* framework, the Third Circuit found that Range, like "all Americans," was one of "the people" protected by the Second Amendment and that his request "to possess a rifle to hunt and a shotgun to defend himself at home," was protected Second Amendment conduct. *Id.* at 100-03. The Third Circuit then examined whether the Government met its burden to demonstrate that stripping firearms from one convicted of Range's prior felony is consistent with the Nation's historical tradition of firearm regulation and concluded that it did not. *Id.* at 103. According to the Third Circuit, the Government failed to show that "our Republic has a longstanding history and tradition of depriving people *like Range* of their firearms." *Id.* at 106 (emphasis added). Thus, the Court held that 18 U.S.C. § 922(g)(1) cannot constitutionally

6

strip him of his Second Amendment rights. *Id.* The Third Circuit noted, however, that its decision was a "narrow one" that found only that § 922(g)(1) was unconstitutional as to Range. *Id.* at 106.

## III.  DISCUSSION

Defendant argues that *Bruen* and *Range* have abrogated *Palmetto,* and that § 922(o) is facially[2] unconstitutional.   However, because the Third Circuit's analysis in *Palmetto* was consistent with the historical analysis required by *Heller* and *Bruen*, the Court finds that *Palmetto* is still binding.  The Court also conducts a *de novo* application of *Bruen* and finds that § 922(o) is facially constitutional.  Thus, Defendant's Motion to Dismiss is DENIED.

### A.  Palmetto Remains Binding Law.

The Third Circuit has held that the Second Amendment "does not protect the possession of machine guns." *Palmetto*, 822 F.3d at 142.  Thus, Defendant must show that either *Bruen* or *Range* has overruled or abrogated *Palmetto*.  Because *Palmetto* remains good law, the Court finds that Defendant's facial challenge to § 922(o) fails.

*Bruen* does not alter *Palmetto*'s application of the Second Amendment.  The *Bruen* Court did not object to the historical scope step of the two-step test. *Bruen*, 142 S. Ct. at 2127.  Instead,

---

[2] Defendant's reply brief raises an as-applied challenge for the first time. D.I. 60 at 2.  "It is too late to be making new arguments in the Reply Brief." *Javo Beverage Co. v. Javy Coffee Co.*, 2023 WL 387587, at *3 (D. Del. Jan. 25, 2023) (Andrews, J.).  In any event, the as-applied challenge fails because Defendant "offers no facts to distinguish why the challenged laws should not apply to him." *Palmetto*, 822 F.3d at 141.  To the extent Defendant's scenario is distinct because he is charged with the possession of auto sears, which are not themselves guns, it weakens Defendant's case that his conduct is within the Second Amendment at all. *See United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence').  Accordingly, it can't be a 'bearable arm' protected by the Second Amendment");  *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368 (D.R.I. 2022) (finding that large capacity magazines are not protected by the Second Amendment because they are not themselves weapons).

7

the Court in *Bruen* cut off the interest balancing step, finding it to be improper. *Id.* at 2129. However, the Third Circuit in *Palmetto* never reached the now-prohibited interest balancing step, and only engaged in the historical scope step that the *Bruen* Court found was consistent with its precedent. *Palmetto*, 822 F.3d at 144. Thus, the Third Circuit's holding in *Palmetto* survives *Bruen* and remains binding on this Court.

Defendant argues that *Palmetto*'s decision improperly "rests upon *Heller* and its references to M-16 rifles" and lacks sufficient "exhaustive historical analysis." D.I. 60 at 5. In making these arguments, Defendant argues that *Palmetto* was wrongly decided, not that *Palmetto* does not bind this Court. District courts are bound by circuit court precedent unless it is "obviously in conflict with Supreme Court precedent." *Rubin v. Buckman*, 727 F.2d 71, 74 (3d Cir. 1984) (Garth, J. concurring); *cf. Day v Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) ("There are indeed circumstances in which a district court or a three-judge panel of this court can disregard circuit precedent because of intervening Supreme Court authority: 'Where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled'") (quoting *Miller v Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)). The Third Circuit's decision in *Palmetto* is neither obviously in conflict with *Bruen*, nor clearly irreconcilable with it. *Bruen*, 142 S. Ct. at 2127 ("Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text,

8

as informed by history."). As such, the Court is bound by *Palmetto* to find that § 922(o) is facially constitutional.

### B. *In the Alternative, a Ban on Machine Guns is Facially Constitutional under Bruen.*

Even if the Court were not bound by *Palmetto*, the machine gun ban of § 922(o) is facially constitutional under *Bruen* and *Range*. In determining whether § 922(g)(1) is constitutional, *Bruen* and *Range* instruct the Court to "first decide whether the text of the Second Amendment applies to a person and his proposed conduct." *Range*, 69 F.4th at 101. If the Defendant can show that he is a "person" protected under the Second Amendment and that his conduct is protected conduct, the burden shifts to the government to "prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (citing *Bruen*, 142 S. Ct. at 2127).

Defendant, like Range, is a "person" protected under the Second Amendment. *Range*, 69 F.4th at 101 (the people "unambiguously refers to all members of the political community"). Yet, *Bruen* also requires Defendant to show that he is engaged in conduct that the Second Amendment protects. *See Range*, 69 F.4th at 101. In support of his Motion, Defendant contends that his "alleged conduct" is "possession of a firearm." D.I. 53 at 8. However, the Supreme Court has long explained that "the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 142 S. Ct. at 2128. Rather, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. In *Bruen*, the Court held that "individual self-defense is 'the central component' of the Second Amendment right," so possessing a handgun for self-defense was a protected activity. *Bruen*, 142 S. Ct. at 2118 (citing *McDonald*, 561 U.S. at 767).

In answering that question for handguns, the Court looked to whether the regulated weapon was "in common use today for self-defense" and whether they are especially "dangerous." *Id.* at 2134. Unlike handguns, at least some categories of machine guns are not in common use (let alone common use for self-defense)—which is all the government needs to show to succeed against Defendant's facial challenge to § 922(o). For example, the Fifth Circuit held that machine guns were not in common use as of 2016 because fewer than 200,000 machine guns were legally owned by civilians. *Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016).[3] Cases that have accepted common use have required millions of weapons, or a number of jurisdictions in which the guns are legal. *See id.*

Moreover, machine guns "have no appropriate sporting use or use for personal protection." *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999). Compared to weapons that are in common use (e.g., handguns), they are exceptionally dangerous. A modern machine gun can fire 1,000 rounds per minute, far exceeding the capacity for danger from the handguns found to be lawful in *Heller* and *Bruen*. *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). Whichever weapons were "dangerous" at the time of the founding, they were not thousands of times more dangerous than the weapons in common use at the time. *See, e.g.*, 1801 Tenn. Acts pp. 260-261 (banning "any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person."). Machine guns are unusual, not commonly used for lawful self-

---

[3] Defendant contends there are around 750,000 machine guns total. D.I. 60 at 5 (citing ATF Firearms Commerce in the United States Annual Statistical Update 2021). The difference between these numbers is likely due to the number of post-samples owned by those who have a special Federal Firearms License, but ultimately irrelevant. Even if all 750,000 machine guns were owned by separate private individuals and used for self-defense, 0.1% of the population is hardly "common use."

defense, and exceptionally dangerous. Thus, bans on them fall within the long tradition of banning

"dangerous and unusual" weapons, and machine guns may lawfully be regulated.

Defendant advances two arguments against this record. First, Defendant argues that,

because the Federal Government first prohibited possession of machine guns in 1986, there is no

"long historical tradition" of banning machine guns. D.I. 53 at 12. This is the wrong analysis

under *Bruen*. Courts do not look to whether the challenged weapon would be common and

dangerous at the time of the founding, but whether it is common and dangerous today, compared

to the weapons in common use today. *Bruen*, 142 S. Ct. at 2144 ("Whatever the likelihood that

handguns were considered 'dangerous and unusual' during the colonial period, they are

indisputably in 'common use' for self-defense today. . . . Thus, even if these colonial laws

prohibited the carrying of handguns because they were considered 'dangerous and unusual

weapons' in the 1690s, they provide no justification for laws restricting the public carry of weapons

that are unquestionably in common use today."). Moreover, machine guns did not exist at the time

of the founding, and a historical analogue when "dramatic technological changes" have taken place

need only be "relevantly similar" to the challenged regulation. *Id.* The laws against "dangerous

and unusual weapons" are relevantly similar to a ban on machine guns.

Second, Defendant argues that the "government's view would give the power to ban any

'new' firearm that was demonstrably different than that which already existed as it would be

dangerous (by the fact that it is a firearm) and unusual (due to its novelty)." D.I. 60 at 6. This

argument misunderstands the standard by assuming that a firearm can be banned merely because

it is novel. For a weapon to be "dangerous and unusual" and, thus, lack Second Amendment

protection, it must be more "dangerous and unusual" than weapons in common use for self-defense

in the present era. However, not all novel firearms are unusual. For example, a prohibition on

11

the production of new models of pre-existing types of protected firearms would likely still violate the Second Amendment. New models of pre-existing firearms are novel—because those specific models did not previously exist—but production of such types of firearms are routine and, thus, not unusual. Similarly, for a weapon to be "dangerous," it must be *more* dangerous than weapons in common use for self-defense in the present era. *Heller* did not specify the types of weapons that qualify as "dangerous and unusual," but stated that the protection of machine guns would be "startling," and every circuit court to address the issue since *Heller* was decided has held that there is no Second Amendment right to possess a machine gun. *Heller*, 554 U.S. at 624; *see Henry*, 688 F.3d at 640 n.3 (collecting cases). To this Court's knowledge, no post-*Bruen* decision has found a machine gun ban facially unconstitutional. *See, e.g.*, *United States v. Delafose*, 2023 WL 7368239, at *2 (W.D. La. Nov. 7, 2023) (rejecting a facial challenge to a machine gun ban and finding them to be dangerous and unusual weapons); *United States v. Lane*, 2023 WL 5663084, at *16 (E.D. Va. Aug. 31, 2023) (similar); *United States v. Kittson*, 2023 WL 5015812, at *3 (D. Or. Aug. 7, 2023) (similar); *United States v. Simien*, 2023 WL 1980487, at *9 (W.D. Tex. Feb. 10, 2023). This Court follows in the footsteps of other courts and finds that machine guns are "dangerous" because they are "likely to cause serious bodily harm" and "unusual" because—unlike weapons commonly used in the home—machine guns can fire more than 1,000 rounds per minute. *See Henry*, 688 F.3d at 640; *c.f. Hollis*, 827 F.3d at 447-48 (explaining that Heller's 'dangerous and unusual test' focuses on the "characteristics of a class of weapons" not the manner in which weapons are used.). Thus, machine guns may lawfully be regulated, and Defendant's facial challenge to § 922(o) fails.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.  The Court will issue an Order consistent with this Memorandum Opinion.